No. 13168

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

BETTY and LOUIS DeLAURENTIS,

Plaintiffs and Appellants,

-vs-

DR. L.E. VAINIO; HELEN MARIE
VANIO, and GLENN PRYOR,

Defendants and Respondents.

---

Appeal from:  District Court of the Second Judicial District,
Honorable Arnold Olsen, Judge presiding.

Counsel of Record:

For Appellants:

McCaffery and Peterson, Butte, Montana
W. D. Murray, Jr. argued, Butte, Montana

For Respondents:

Maurice Maffei argued, Butte, Montana

---

Submitted:  March 2, 1976

Decided: MAY 3

Filed:

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a judgment of the district court, Silver Bow County, dissolving a temporary restraining order and holding defendants not in violation of a restrictive covenant prohibiting trailers or mobile homes being used as permanent residences on the property in question.

On June 5, 1975, plaintiffs filed an action in the district court seeking an injunction to prevent defendants from violating a restrictive covenant. The complaint alleged that plaintiffs Betty and Louis Delaurentis, husband and wife, were the owners of Lot No. 6, McNeece Addition to the city of Butte, Montana. That defendants L. E. Vainio and Helen Vainio were the owners of Lot No. 5, McNeece Addition. It was alleged defendant Glenn Pryor made a commitment to purchase Lot No. 5 from defendants Vainio and intended to install a "Barrington" double wide trailer upon a permanent foundation on Lot No. 5. The complaint further alleged that the grant deeds to both lots contained a restrictive covenant that provided:

"No trailers or mobile homes shall be used as a permanent residence on said premises."

Upon an allegation that the violation of the covenant would cause great and irreparable injury to plaintiffs, the district court issued a temporary restraining order and an order to show cause ordering defendants to appear for hearing on June 16, 1975, and to cease and desist from installing the double wide trailer on Lot No. 5 in violation of the restrictive covenant. Hearing was held on June 16, 1975, on the order to show cause. Thereafter, the district court entered judgment for defendants and dissolved the temporary restraining order. The court in its judgment and order said:

"* * * the Barrington Home being purchased by the Defendant Glenn Pryor, and to be erected upon the lot owned by the Defendants [Vainio] is not a trailer

or mobile, but is a modular home or house and therefore is not in violation of the restrictive covenant * * *."

Plaintiffs appeal from the judgment.

Numerous issues are presented for review by this Court, but the controlling issue is whether the structure intended to be placed on Lot No. 5 is a trailer or mobile home. Was there sufficient credible evidence to support the judgment of the trial court, which was rendered without findings of fact or conclusions of law?

The structure in question is known as a Barrington double wide "mobile home". It consists of two units, each measuring 12' wide by 64' long, and when joined form a home 24' wide by 64' long. It has a shingled roof, house-type siding, and is a frame construction. Each unit was received from the manufacturer with wheels and axles and was sold to Pryor with the wheels and axles intact. The structure was manufactured in Idaho and was certified by the Recreation and Mobile Home Department of that state. The structure was purchased from Great Western Trailer Sales in Butte, Montana, and is to be placed on a permanent concrete foundation.

Defendants claim and the district court found, that the structure is a modular type home. Defendants give us in their brief on appeal, this definition of the word "modular", taken from the latest Merriam-Webster dictionary: "adj. relating to, or based

on a module or a modulus; constructed with standardized units or dimensions for flexibility and variety in use." Defendants allege there are three differences between a modular home and a mobile home:

(1) A modular home can be constructed in duplicate fashion on the site by a contractor. A mobile home cannot be duplicated by a contractor because "it is made of pieces of metal siding and the roof is one piece of steel."

(2) Modular homes have eaves twelve to twenty-four inches wide which can be retracted during transportation. Mobile homes do not have eaves because mobile homes are constructed strictly of metal and the eaves cannot be retracted or folded during transportation.

(3) The purpose of wheels and axles on a modular unit is to provide an inexpensive means of transporting the unit from the factory to the dealer's lot and then to the building site. The purpose of wheels and axles on a mobile home is to provide a chassis for movement upon a highway.

The structure in question here may very well be characterized as modular under the limited definition provided by defendants. The structure also meets the definition of a mobile home under Montana statutory law. The Montana legislature has given the Construction and Maintenance Division of the Montana Department of Administration authority to adopt a definition of "mobile home" for purposes of adopting and enforcing building codes within the state. Sections 69-2105(14), 69-2122, R.C.M. 1947. Pursuant to that authority the Construction and Maintenance Division adopted this definition:

- 4 -

"(13) Mobile home means any dwelling unit larger than two hundred fifty-six (256) square feet in area which is either wholly or in substantial part manufactured at an off-site location and any movable or portable dwelling over thirty-two (32) feet in length and over eight (8) feet wide, constructed to be towed on its own chassis and designed without a permanent foundation for year-round occupancy, which includes one (1) or more components that can be retracted for towing purposes and subsequently expanded for additional capacity, or of two (2) or more units separately towable but designed to be joined into one (1) integral unit, as well as a portable dwelling composed of a single unit." (Emphasis supplied). MAC 2-2.10(6)-S10220 (13). See also MAC 2-2.10(6)-S10180.

Defendants argue the statutes and cases on the subject predate the modular home concept and the term "modular" should be construed. This is probably true, however, the construction should come from the legislature. There are many reasons for this, in addition to the fact this record does not contain expert testimony of such depth or quality to permit judicial definition. Jerry Hanson, salesman for Great Western Trailer Sales, who sold the double wide to Glenn Pryor, does not get into the subject firm enough or with the kind of evidence that could take it out of the Montana statutary definition.

Defendants raise the issue that plaintiffs' complaint was not properly verified. The objection placed in the district court was that the verification was on information and belief. The district court took the motion under advisement and asked for briefs and proceeded with the hearing.

The district court thereafter ruled for defendants on the merits and dissolved the temporary injunction. This had the legal effect of a denial of defendants' motion to dismiss plaintiffs' complaint. This denial of defendants' motion is an appealable order and cannot be reviewed on appeal from the judgment on the merits. Little Horn State Bank v. Gross, 89 Mont. 472, 476, 300 P. 277. In any event, the verification requirement of section 93-4205, R.C.M. 1947, is generally conceded to be for the purpose of insuring good faith and truthfulness on the part of the complainant. Butte & Boston Consolidated Mining Co. v. Montana Ore

Purchasing Co., 24 Mont. 125, 60 P. 1039. At the hearing, the complainant testified under oath on the matters contained in the complaint and at this juncture the issue would become moot.

We find insufficient credible evidence to support the trial court. The judgment is reversed and remanded with direction to enter judgment for plaintiffs.

_____
Justice

We Concur:

_____

_____

_____
Justices

_____
Hon. Bernard Thomas, District Judge,
sitting in place of Chief Justice
James T. Harrison.

- 6 -